Randi ZINBERG, on behalf of herself and all others similarly situated, Plaintiff,

v.

WASHINGTON BANCORP, INC., et al., Defendants.

Civ. A. No. 88–5174 (HAA).

United States District Court, D. New Jersey.

June 8, 1990.

Cohn, Lifland, Pearlman, Herrmann & Knopf by Peter S. Pearlman, Saddle Brook, N.J., for plaintiff.

John G. Gilfillan, III, Carella, Byrne, Bain & Gilfillan, Roseland, N.J., for all defendants except John Doe.

Jan Alan Brody, Cecchi, Brody & Agnello, Lyndhurst, N.J., for Anthony D. Calabrese, Paul C. Rotond, Gwendolyn Connors, Diodato J. Morin and Thomas Bingham.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Ms. Randi Zinberg brought this class-action complaint on behalf of herself and all other persons or entities who purchased common stock in Washington Bancorp, Inc. ("WBI") between March 18, 1988 through November 17, 1988, against WBI, Washington Savings Bank ("WSB"), and Mr. Anthony D. Calabrese, Mr. Paul C. Rotondi, Ms. Gwendolyn Connors, Mr. Diodato J. Morin, Mr. Thomas Bingham and Mr. Anthony Cardino, former WBI and WSB officers, alleging violations of the Securities and Exchange Act, Section 10(b), codified at 15 U.S.C. § 78j(b), and Securities and Exchange Rule 10b–5, and a pendent state-law claim of negligent misrepresentation. On August 16, 1989, the plaintiff filed an amended class-action complaint and jury demand. On September 11, 1989, the plaintiff filed a notice of motion for class certification. I referred this application to United States Magistrate Stanley R. Chesler for his report and recommendation ("R & R"). He heard oral argument on February 26, 1990. On April 19, 1990, he filed a report, recommending that the plaintiff's motion be granted, and that the class of "all persons or entities who purchased the common stock of Washington Bancorp., Inc. during the period of March 18, 1988 through November 17, 1988 inclusive (the "class period")" should be certified for both federal and state pendent claims presented. The defendants WBI and WSB have raised objections to certain portions of Judge Chesler's report. I will review them now.

## STANDARD OF REVIEW

The Federal Magistrate's Act of 1968, *as amended,* 28 U.S.C. § 636(b)(1)(B) and General Rule 40(D)(5) provide that this court can refer certain dispositive motions to a United States Magistrate for an R & R. This delegation of judicial power does

not violate Article III of the United States Constitution so long as this court ultimately decides the referred matter. *See United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). For this reason, the standard of review for such a report is *de novo* consideration of all portions of the report to which the parties object, if the subject of the report is a dispositive motion. *See, e.g., United Steelworkers of America, AFL–CIO v. New Jersey Zinc Co.*, 828 F.2d 1001 (3rd Cir.1987). A motion for class certification is such a dispositive motion. *See* General Rule 40(A)(2) of the General Rules for the United States District Court for the District of New Jersey. I will therefore review the obected-to portions of the instant report on a *de novo* basis.

### BACKGROUND

The plaintiff filed an action "on behalf of herself and all other persons or entities who purchased securities of Washington Bancorp, Inc. ("WBI") ... within the Class period [between March 18, 1988 through November 17, 1988]," to recover damages arising out of the defendants' purported federal-securities-law and New Jersey common-law violations (amended complaint ¶ 1). Her amended complaint states that she purchased 650 shares of common stock from WBI during the class period. Apparently, the plaintiff bought these shares from a relative. The plaintiff alleges certain WBI public documents intentionally and recklessly misrepresented WBI's actual loan policies and procedures and omitted other material facts. WBI's peak market value was $19.50 on August 18, 1988. After the misrepresentations and omissions were revealed, in November, 1988, apparently the value of the stock plummeted to $11.75 per share. The plaintiff avers that such action, in violation of federal securities law and state common law, caused her,

and others like her, monetary harm. After filing the complaint, and the complaint completely surviving a Rule 9(b) and 12(b)(6) attack, *see Zinberg v. Washington Bancorp., Inc.*, Civ. A. No. 88–5174, transcript of opinion (D.N.J. April 24, 1989) (unpublished), the plaintiff filed a motion for class certification. As I stated above, I referred this motion to Judge Chesler for his R & R.

On April 19, 1990, Judge Chesler filed an R & R. Initially, Judge Chesler noted that the main thrust of the defendants' opposition to the plaintiff's motion concerned the plaintiff's alleged inability to meet the "typicality" standard for class certification. R & R, at 3.[1] Before treating the "typicality" requirement, he found that the plaintiff had demonstrated that the proposed class was so numerous that joinder would be impracticable. Id. at 4. He further concluded that common questions of law and fact existed among the class. Specifically, he explained, "whether or not defendants, in fact, made misrepresentations to the public is a question of fact which is common to all class members. Likewise, the legal effect of such statements, i.e. whether a fraud upon the market theory is applicable to these facts is common to all class members." Id. at 5.

With respect to typicality, Judge Chesler explained that "[t]he typicality requirement is satisfied as long as plaintiff and the Class 'point to the same broad course of alleged fraudulent conduct' to support a claim for relief." Id. at 7 (quoting *In re Electro–Catheter Securities Litig.*, [1987–88 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,643, at 97,931, 1987 WL 47375 (D.N.J.1987)). Judge Chesler dismissed the defendants' contention that the plaintiff's claims were not typical of the class because the plaintiff had access to inside information since she bought the stock through a relative. Judge Chesler reasoned that merely having a close relative as a broker

---

1. In part, the relevant Rule for maintaining a class action states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to

the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

did not indicate access to inside information. Judge Chesler thus concluded that the plaintiff satisfied the typicality requirement. He also concluded that the plaintiff would fairly and adequately represent the class. Id. at 9.

Having found that the plaintiff satisfied all the requisites of Fed.R.Civ.P. 23(a), he then turned to whether the plaintiff had satisfied the requirements of Fed.R.Civ.P. 23(b)(3)—whether common issues of law and fact predominated and whether a class action was a superior way to adjudicate the controversy.[2] With respect to these requisites, Judge Chesler noted that the defendants argued that reliance on misrepresentations and omissions could not be presumed in this case; that some of the class may have relied on oral representations rather than documents; and that the plaintiff was an insider by way of her relationship to her broker. Apparently, the defendant submitted that these contentions demonstrated that common questions of law and fact did not predominate, and, therefore, that class certification should not adhere based on these grounds.

Judge Chesler, however, disagreed with the defendants. He observed that the plaintiff(s) need not prove individual reliance with regard to the federal claim because the "fraud-on-the market theory eliminated "the need for a direct causal link between every class member." Id. at 13. Judge Chesler also discounted the defendant's contention regarding the plaintiff's relationship to her broker because the defendants had presented nothing to indicate that the plaintiff or her broker had access to inside information. Id. at 13–14. Judge Chesler also dismissed the defendants' contention concerning the nature of the alleged misrepresentations, noting that the

defendants' liability arose out of written misrepresentations—presenting core issues of fact. Id. at 14.

Judge Chesler also treated the predominancy issue with respect to the common-law claim. He stated,

> defendants' assertion that purchasers may have relied upon varying oral representation [sic] rather than solely upon offering documents which would dilute their common law fraudulent misrepresentation claims is misplaced. Differences among class members concerning their individual damages are inherent in securities class litigation, but do not render individual questions predominant.

Id. (citations omitted). He thus concluded that common questions of law and fact predominated.

Judge Chesler also observed that a class suit was the superior way of handing this action. He observed that there were potentially hundreds of class members here. He reasoned that the class mechanism would be the best way of resolving all of their claims in a timely fashion and sparing the court the expense of dealing with a barrage of lawsuits. Id. at 16. Judge Chesler saw no difficulty in managing this action, either.

Before concluding, Judge Chesler also observed that the pendent common-law claim of negligent misrepresentation should be certified as a class-action claim. He explained that the same proof introduced in the attempt to establish the federal claim was also relevant with respect to the state-law claim. Id. at 18. He further stated that

> plaintiff and other members of the class need not demonstrate that they each have personal contacts with the state

---

**2.** Fed.R.Civ.P. 23(b) provides:

An action may be maintained as a class action if the prerequisites of [Fed.R.Civ.P. 23(a) ] are satisfied, and in addition:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the

findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

whose law is chosen, only that there are sufficient contacts between their claims and that state such that the application of its law would not be arbitrary or unfair.... Furthermore, "the interests of states other than New Jersey where class members reside would be advanced by providing these plaintiffs with an opportunity to litigate their negligent misrepresentation claims in a single class action."

Here[,] there are many significant contacts between the plaintiff's claims and the State of New Jersey. First, WBI has its principal place of business in New Jersey. Further, many of the false and misleading statements emanated from the corporate offices within the State. Additionally, it is likely that many class members are New Jersey residents. Moreover, "New Jersey has a strong policy interest of preventing securities fraud." ... Thus, it would be neither arbitrary nor unfair to apply New Jersey common law to the conduct of the defendants with respect to the claims of all class members.

Id. at 18–19 (citations omitted). Judge Chesler therefore granted the motion to certify the class with respect to both the federal and the pendent state claims. Id. at 19.

### OBJECTIONS

WBI and WSB apparently have two objections to Judge Chesler's R & R. First, they submit that Judge Chesler erred by failing to consider the creation of a subclass of investors who can prove actual reliance upon the alleged misrepresentation. The defendants apparently contend that the state-law claim involves proof of actual individual reliance—a fraud-on-the-market-theory, which negates the requisite of individual reliance, cannot be utilized. The defendants apparently fear that by certifying the negligent-misrepresentation issue for class-action treatment the court has altered the standard of proof with respect to negligent misrepresentation claims. Objections, at 4.

Second, they submit that the magistrate erred by stating that the plaintiff could

utilize a fraud-on-the-market theory because, according to them, a prerequisite for the utilization of this theory of liability is that there must be a "thorough and efficient market." The defendants WBI and WSB assert that the market at issue here, NASDAQ, is not a "thorough and efficient" market. They apparently ask me to conclude that the plaintiff cannot utilize the fraud-on-the-market theory in advancing the federal securities-law claim.

### DISCUSSION

As just indicated, the defendant WBI's and WSB's two objections concern (1) the certification of the pendent state-law claim and (2) the viability of the fraud-on-the-market theory. I will assess the merits of these objections, in turn.

### 1. Class Certification of the Negligent–Misrepresentation Claim

█ Apparently, the defendant contends that by certifying as a class action that part of the case pertaining to the common-law claim of negligent misrepresentation, the court has changed the requirements for proving negligent misrepresentation under New Jersey law. This contention puzzles the court. Upon review of the R & R, I see nothing therein which indicates that the court will not follow the proper legal precepts concerning negligent misrepresentation.

Moreover, time and time again, federal courts, confronted simultaneously with federal securities-law claims and pendent state-law misrepresentation or fraud claims, have certified the pendent state claims for class-action treatment. *See, e.g., Grace v. Perception Technology Corp.,* 128 F.R.D. 165, 171 (D.Mass.1989); *Longden v. Sunderman,* 123 F.R.D. 547, 555–56 (N.D.Tex.1988); *In re Boardwalk Marketplace Securities Litig.,* 122 F.R.D. 4, 8 (D.Conn.1988); *Keyser v. Commonwealth Nat'l Financial Corp.,* 121 F.R.D. 642, 649–50 (M.D.Pa.1988); *In re ORFA Securities Litig.,* 654 F.Supp. 1449, 1461 (D.N.J.1987). Before doing so, these courts basically focused on the following

fundamental concerns: (1) whether in litigation of the state-law issues in a class-context, there would be significant variation in the proofs of the class members and (2) whether there would be significant variation in the state law or laws that applied to the nonfederal claims. In their objections to me, the defendants WBI and WSB have not raised either concern, nor have they challenged Judge Chesler's observations concerning the lack of significant variation in the proofs, *see* R & R, at 18, or the lack of significant variation in the law, *see* id. at 19. Accordingly, the defendant's objection concerning the certification of the pendent negligent-misrepresentation claim is meritless.

### 2. Fraud-on-the-Market Theory

██ The defendants second objection is that the plaintiff does not have a fraud-on-the-market claim under federal securities law, pursuant to *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) and its progeny, because the NASDAQ is not a "thorough and efficient market." Among other things, the plaintiff submits in rebuttal to this argument that this objection is an issue for trial, not on a motion for class certification. I agree, in a way, with the plaintiffs. If the defendants believe that the NASDAQ is an improper market for the utilization of the fraud-on-the-market theory, then that is more properly an issue to be resolved on the merits, either in the context of a summary-judgment motion (if there is a substantial default in the plaintiff's case in this regard) or at a plenary trial. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir.1971) (Wisdom, J.) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."), *quoted*

*in Eisen,* 417 U.S. at 178, 94 S.Ct. at 2153. Hence, the defendants' objection in this regard has no merit, either.

### CONCLUSION

I have read Judge Chesler's R & R and fully agree with it. I have not found any merit in the defendants WBI's and WSB's objections to it. Accordingly, I will order that the April 19, 1990 R & R in this matter be adopted in full and that the plaintiff's motion for class certification be granted. She may move forward as the class representative for the class consisting of "all persons or entities who purchased the common stock of Washington Bancorp, Inc. during the period of March 18, 1988 through November 17, 1988 inclusive" regarding both the federal-securities-law and pendent negligent-misrepresentation claims.

### REPORT AND RECOMMENDATION

STANLEY R. CHESLER, United States Magistrate Judge.

This matter comes before the Court upon plaintiff's motion for class certification pursuant to *Fed.R.Civ.P.* 23. The motion was referred to me by the Honorable Harold A. Ackerman. Oral arguments were heard on February 26, 1990.

### BACKGROUND

On December 5, 1988, plaintiff filed an action "on behalf of herself and all other persons or entities who purchased securities of Washington Bancorp, Inc. (WBI) ... within the Class period [between March 18, 1988 through November 17, 1988]", (Complaint at paragraph 1) to recover damages caused by defendants' alleged violations of the federal securities laws and New Jersey state law.

According to her amended complaint, plaintiff purchased 650 shares of WBI, a holding company whose principal subsidiary is the Washington Savings Bank (WSB) on August 18, 1988 at the stocks' peak market value of $19.50. Her stockbroker Joel Bernstein, who is also her stepfather, placed the buy order at Doft & Co., Inc., a

Wall Street brokerage house with which he is associated.

Plaintiff alleges that WBI's Form 10K filed with the SEC on or about March 30, 1988, a letter to shareholders from Mr. Calabrese and Mr. Rotondi contained in WBI's annual report, and other parts of the annual report contained information intentionally or recklessly misrepresenting WBI's actual loan policies and procedures. The plaintiff further contends that the defendants omitted material facts in their reports and letters.

By November 18, 1988, WBI's price per share dropped to $11.75. To date, plaintiff still owns the WBI stock she purchased on August 18, 1988.

Plaintiff avers that she, as well as members of the proposed class were injured by the allegedly fraudulent statements and omissions of the defendants. She asserts, on behalf of herself and the proposed class, causes of action sounding in common law fraud, as well as federal securities claims based upon a "fraud on the market" theory. *Basic Incorporated v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

Plaintiff has now moved for class certification.

Defendants' papers opposed class certification on the following grounds: (1) the proposed class which plaintiff seeks to have certified fails to meet the numerosity requirement of Federal Rule of Civil Procedure 23(a); (2) plaintiff does not satisfy the typicality requirement of Federal Rule of Civil Procedure 23 and; (3) plaintiff's inadequacy as a class representative. Furthermore, defendants assert that plaintiff's pendent state law claims should not be certified because they are not common to the entire class.

At oral argument, defendants conceded the numerosity requirement of Rule 23(a) had been met, and this issue is, therefore, not really in dispute. The main thrust of defendants' objections to plaintiff's motion for class certification concern plaintiff's failure to meet the typicality standard.

## DISCUSSION

### Class Certification Pursuant to Rule 23.

■ Federal Rule of Civil Procedure 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class.

Many Courts have emphasized the necessity for the Rule 23 class suit in securities fraud actions. *E.g. Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 137, 149 (D.N.J.1984); *Lewis v. Goldsmith*, 95 F.R.D. 15, 18 (D.N.J.1982). Certification of a plaintiff class is the rule in the Third Circuit and in this Court in cases where securities fraud claims allege material misrepresentations and omissions contained in materials such as financial statements and annual reports disseminated to shareholders. *See, In re IGI Securities Litigation*, 122 F.R.D. 451 (D.N.J.1988). The plaintiff must establish that all the prerequisites of Rule 23(a) are actually met. *General Telephone Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

### Rule 23(a)

#### *Numerosity*

■ This element of Rule 23 requires the putative class to be so numerous that joinder of all members is impracticable. *Vargas v. Calabrese*, 634 F.Supp. 910, 918 (D.N.J.1986). Precise enumeration of the members of a class is not necessary for the action to proceed as a class action. Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d section 1762 (1982). It is permissible to estimate class size. *In re ORFA Securities Litigation*, 654 F.Supp. 1449 (D.N.J.1987). Joinder of all members of the class need not be impos-

sible to satisfy Rule 23: "Impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964); Wright, Miller & Kane *Federal Practice and Procedure,* Civil 2d section 1762 (1986).

■ Plaintiff has clearly established that the proposed class is so numerous that joinder would be impracticable. There are potentially hundreds of class members geographically dispersed throughout the United States because WBI's common stock was actively traded on an over-the-counter basis nationally. As of November 1987, there were approximately 1,155 shareholders of record of WBI common stock. WBI had more than 2,300,000 shares of common stock outstanding, with more than 500,000 shares having been purchased during the "class period".

■ Defendants aver that because there were only approximately ninety persons, most being New Jersey based investors, who purchased Washington Bancorp., Inc. stock during the proposed class period, the numerosity requirement has not been met. It appears likely, however, that may of these "purchasers" were brokerage houses who held the securities in "street form" for numerous customers. Moreover, even if these were individual purchasers, the numerosity requirement has been met. *See Epstein v. Moore,* [1988–1989 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 93,957, 90,442, 1988 WL 62213 (D.N.J.1988) (a proposed class of between 56 to 85 individuals satisfied the numerosity requirement); *see also* 3 B.J. Moore, *Moore's Federal Practice,* para. 23.05[1] (2d. Ed.1982) (numbers in excess of forty have sustained the numerosity requirement).

It is clear to the Court that plaintiff has satisfied the numerosity requirement of Rule 23(a)(1).

## Commonality

■ In determining whether common questions exist, Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. *Blackie v. Barrack, supra* at 902–05. Rule 23(a)(2) is satisfied if there are *some* questions of law or fact common to the class. *Vargas v. Calabrese supra* at 918. (emphasis in the original). Thus, it is not necessary that all factual or legal issues raised by the case concern each class member. *Id.* citing 7C Wright & Miller, *Federal Practice & Procedure,* 1763 at 603 (1972).

■ Plaintiff has demonstrated that there are substantial questions of fact and law in this action common to the plaintiff and all other purchasers of WBI common stock during the "class period". Obviously, whether or not defendants, in fact, made misrepresentations to the public is a question of fact which is common to all class members. Likewise, the legal effect of such statements, i.e. whether a fraud upon the market theory is applicable to these facts is common to all class members. These common questions of law and fact are more than sufficient to satisfy the requirements of Rule 23(a)(2) which "generally [has] been permissively applied to a large variety of factual circumstances including allegations of ... securities fraud." *In re Data Access Systems Securities Litigation, supra* at 137.

## Typicality

■ Rule 23(a)(3) requires that the claims or defenses of the representative party be typical of the claims or defenses of the class. *Weiss v. York Hospital,* 745 F.2d 786, 809 (3rd Cir.1984) *cert. denied* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Since the inquiry focuses on the degree to which the claims or defenses of the representative is characteristic of putative class members' claims, it is similar to the commonality requirement. However, the inquiry has independent significance when it is used to screen out class actions involving legal or factual positions of the representative class which are "markedly different" from those of the other class members. *Id.* at 810 n. 36. In such situations "there exists the danger that unique circumstances or legal theory will receive inordinate emphasis and that

the other claims will not be pressed with equal vigor or will go unrepresented." *Id.*

A named plaintiff's claims are "typical" if they arise from "the same event or course of conduct" as those of the class generally. *Epstein v. Moore, supra.* As the Third Circuit has explained, the Court must examine whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.) *cert. denied sub. nom. Wasserstrom v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Thus, typicality does not require identity, and even atypical aspects of the claims can be addressed using subclasses and separation of individual issues. *Id.* The focus is on defendant's behavior, not that of plaintiff, and on whether the class can point to the same general, over-all course of fraudulent conduct. *In re Electro–Catheter Securities Litigation,* [1987–88 Transfer Binder] Fed. Sec.L.Rep. (CCH) para. 93,643, 1987 WL 47375 (D.N.J.1987). The typicality requirement is satisfied as long as plaintiff and the Class "point to the same broad course of alleged fraudulent conduct" to support a claim for relief. *Id.* at 97,931.

Plaintiff, as well as each member of the class, purchased WBI common stock during the "class period". Plaintiff, as well as each class member, claims that misrepresentations made to the public by defendants caused damages. The fraud upon the market theory is applicable to all class members, as well as to plaintiff. Pendent New Jersey state law claims may be applicable to each class member.

Defendants vigorously dispute plaintiff's position. They contend that plaintiff cannot satisfy the typicality requirement because she "is subject to the unique and atypical defense of, at minimum, coming into court with unclean hands, or, in the worst case scenario, litigating in bad faith." *See* Defendant's Brief at 18. At the heart of defendants' objections is plaintiff's family relationship with her broker, who is her stepfather and who resides in the same household with her. Defendants contend that this produces a "conflict of interest" because plaintiff allegedly had "access to 'inside information' not available to the general public." *Id.* at 20. The problem with this argument is that it is pure argument with no factual support. Apart from plaintiff's relationship with her broker, there is absolutely no indication that she has any "insider information" at all. In my view the fact that one's broker is a close relative is patently insufficient to raise even the slightest inference that such "insider-information" has been provided. Moreover, no evidence has been presented that "insider information" was actually available to plaintiff's stepfather/broker in the first place. Thus, this case is readily distinguished from those relied on by defendants. *See, In re Saxon Securities Litigation,* [1983–1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 99,691, 1984 WL 2399 (S.D.N.Y.1984) (documented evidence that conversations between the broker and officers of the company whose stock was being purchased took place); *see also, Kolin v. American Plan Corporation* [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 92,728, 1986 WL 36311 (E.D.N.Y.1986) (substantial evidence of insider trading presented to the court).

Plaintiff has satisfied the typicality requirement because she and the class "point to the same broad course of alleged fraudulent conduct to support a claim of relief." *In re Electro–Catheter, supra* at 97,931.

### Fair and Adequate Representation

The Third Circuit has noted that the "typicality" and "adequacy" requirements of Rule 23 overlap. *Eisenberg v. Gagnon, supra* at 786. The final requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. *Vargas v. Calabrese, supra* at 919.

Adequate class representation depends on two factors: a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litiga-

tion and b) the plaintiff must not have interests antagonistic to those of the class.

*Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir.) *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

### a. *Plaintiff's counsel is qualified and experienced.*

In determining whether an action will be vigorously prosecuted, the decisions have stressed the skill and experience of counsel. *Lewis v. Curtis,* 671 F.2d 779, 788–89 (3rd Cir.) *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). In the instant case, the named plaintiff's counsel, Cohn & Lifland, certainly possesses the qualifications and experience in conducting the proposed litigation. Contrary to defendants' assertion, there is no requirement pursuant to Rule 23, that the named plaintiff must be totally aware of all the facts concerning the claims in issue.

### b. *Plaintiff's interest are not antagonistic to those of the Class.*

The Third Circuit has alluded to problems found in the context of unique defenses asserted against the named plaintiff. Where a unique defense is assertable against the named plaintiff, there is the danger that an "inordinate emphasis" will be placed on those claims unique to the representative. *Zenith Laboratories, Inc. v. Carter Wallace,* 530 F.2d 508, 512 (3d Cir.1976), *cert. denied* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). Conversely, where the unique defense is assertable against the putative class members, but not to the named plaintiff, there is the corresponding danger that "insufficient emphasis" will be placed on defending against those claims by the named plaintiff, who will not have a direct stake in the outcome. In both situations, the existence of the unique defense results in serious concerns regarding the adequacy of the representation by the named plaintiff. "[Q]uantitative factors, such as the fact that no other shareholders have sought to intervene in this action, are not relevant to consideration of the adequacy of plaintiff's representation under Rule 23(a)(4)." *Green v. Wolf Corporation,* 406 F.2d 291, 298 (2d Cir.1968) *cert. denied sub nom. Troster, Singer & Co. v. Green,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Defendants reiterate that plaintiff's close family relationship with her broker/stepfather in and of itself conflicts or potentially conflicts with the interests of absent class members in "receiving the most complete recovery possible by assuring the involvement of all potentially responsible parties." Defendants' Brief at 23. Furthermore, assert defendants, by failing to join Bernstein and Doft & Co. as party defendants, plaintiff "has already exhibited an antagonistic interest as related to absent class members." *Id,* at 27. Clearly, defendants state, "any representative plaintiff who claims to be 'defrauded' seeks, by way of vigorous prosecution, to join any and all parties involved in the transaction," (*Id,* at 27), and plaintiff has failed to do so by not joining Doft & Co. as a defendant.

Defendants have failed to demonstrate even the slightest factual basis substantiating the claim that there is a basis for bringing suit against either Bernstein or Doft & Co.. No information has been presented which demonstrates that either Bernstein or Doft & Co. created an individual market for the stock in question. Nor has any information been presented demonstrating that either Bernstein and/or Doft & Co. underwrote the stock sale. *Peil v. Speiser,* 806 F.2d 1154, 1159, 1160–63 (3rd Cir.1986). Therefore, it is not readily apparent why either the broker or the brokerage firm would be a possible defendant. in this action.

Plaintiff, on the other hand, has demonstrated that she, as well as each class member, will prosecute this action based upon fraudulent misrepresentations and upon the theory of fraud upon the market, as well as upon New Jersey state law claims. Plaintiff's claims do not appear to be antagonistic to the claims of the class.

Therefore, I conclude that the named plaintiff has meet the requirements of Rule 23(a).

### RULE 23(b)(3)

Rule 23(b) provides, in pertinent part: An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.   .   .   .   .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced ... by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class.

*Common Questions of Law or Fact Predominate*

In order to resolve this aspect of the Rule 23(b)(3) inquiry, the court must identify the legal and factual issues, common and diverse, and the determine whether the common issues predominate. *See, Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.1974) *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

Plaintiff contends that the common factual and legal issues include: 1) the purchase of common stock over a limited period of time at similarly inflated prices under similar circumstances; 2) defendants' issuance of fraudulently misleading statements concerning the operations of WBI; 3) WBI's fraud on the market, 3) class members' detrimental reliance upon these misstatements, and; 5) defendants' violation of New Jersey common law.

Defendants assert that reliance on the allegedly fraudulent published materials must be demonstrated, and cannot be presumed in actions such as this one, citing *Maiden v. Biehl*, 582 F.Supp. 1209, 1220 (S.D.N.Y.1984). In addition, defendants assert that purchasers may have relied upon varying oral representation rather than solely upon the offering documents which would dilute their common law fraudulent misrepresentation claims. And, of course, defendants reiterate their arguments regarding plaintiff's atypical position, i.e. her family relationship with her broker.

"Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations ... may be presumed for the purposes of a Rule 10b–5 action." *Basic Incorporated v. Levinson*, 485 U.S. 224, 247, 108 S.Ct. 978, 992, 99 L.Ed.2d 194 (1988).

"[A] plaintiff may prevail even if he was entirely unaware of the alleged misrepresentations. Under the fraud on the market theory, plaintiffs' reliance is not on defendants' fraudulent actions directly, but on the marketplace's reflection of the value of the stock." *Peil v. Speiser, supra* at 1163.

Thus, defendants argument regarding the need for a direct causal link between every class member and defendants' actions is misplaced.

Likewise, defendants' assertion that plaintiff's atypical position in relationship to her broker will overshadow the common factual and legal issues is misplaced. As discussed above, nothing has been presented to substantiate the assertion that plaintiff or her broker did in fact have access to "insider information" which would warrant a unique defense by plaintiff. Here, the defendants' liability arises out of written misrepresentations contained in a document or documents publicly disseminated by defendants. These written misrepresentations create the core of issues common to all class members, and, thus, predominate in the action. *See, Blackie v. Barrack, supra* at 905; *see also,*

*In re ORFA Securities Litigation, supra* at 1461.

■ Similarly, defendants' assertion that purchasers may have relied upon varying oral representation rather than solely upon the offering documents which would dilute their common law fraudulent misrepresentation claims is misplaced. Differences among class members concerning their individual damages are inherent in securities class litigation, but do not render individual questions predominant. *See, Blackie v. Barrack, supra* at 905. Where all class members are united in their desire to establish the defendants' complicity and liability, individual issues, if they exist, are secondary. *See, In re Electro–Catheter Securities Litigation, supra.*

The cases relied upon by defendants are clearly distinguishable, because they do not concern themselves with liability resulting from false, written misleading statements made to all class members (*see, Maiden v. Biehl, supra; Felton v. Walston & Co.,* [1975–76 Transfer Binder] Fed.Sec.L.Rep. (CCH) para. 95,320, 1975 WL 423 (S.D.N.Y.1975)), or because they were decided before the fraud on the market theory was adopted by the United States Supreme Court in *Basic, Inc. v. Levinson.*

Therefore, this court concludes that common issues of fact and law do predominate in this action.

### Class Action is a Superior Method

■ The *Epstein* court stated that, "an action brought under the securities laws involving numerous plaintiffs who bought or sold shares in the marketplace under similar conditions can be adjudicated most efficiently as a class action." *Epstein v. Moore, supra* at 90,444; *see also, Lewis v. Goldsmith, supra* at 24. When it is a virtual certainty that a private class action is the only available avenue a plaintiff may use in order to redress the alleged wrongs, (*see, e.g., In re Data Access Systems Securities Litigation, supra* at 142) because those who have been injured "are in a poor position to seek legal redress, either because they do not know enough or because

such redress is disproportionately expensive," (*Dolgow v. Anderson,* 43 F.R.D. 472, 484–85 (E.D.N.Y.1968)), then a class action is a superior method of handling the action.

A class action is superior to other available methods of adjudicating this controversy. As in most 10b–5 actions, the total damages sustained by most class members here is hardly sufficient to justify an individual action. Thus, if this case does not go forward as a class suit, the injuries suffered by many members of the class will go unredressed. *Werfel v. Kramarsky,* 61 F.R.D. 674, 682 (S.D.N.Y.1974).

■ One of the primary considerations in evaluating whether the class action device is superior to other methods for fair and efficient adjudication of the controversy, is the number of persons injured by defendants' alleged wrongful conduct. *In re IGI Securities Litigation, supra* at 461. When there are numerous plaintiffs, class certification avoids taxing the court with a barrage of lawsuits adjudicating the same issues and involving the same defendants. *Id.*

■ Here, there are potentially hundreds of class members in a similar situation to the present plaintiff, who, once alerted may allege the same wrongful conduct on the part of the defendants. This factor alone would be sufficient to demonstrate that a class action is a superior method by which to adjudicate this case, since a class action will avoid taxing the court with a barrage of lawsuits adjudicating the same issues and the same defendants. *Id.*

This court may not conduct a preliminary inquiry into the merits of the plaintiff's suit, including her use of the fraud on the market theory to determine a motion for class certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). It can, however, as it now does, find that this case clearly lies within the mainstream of securities fraud class actions, and as such, satisfies the superiority requirement of Rule 23(b)(3). *See, e.g. Blackie v. Barrack, supra; Har-*

*ris v. Palm Springs Alpine Estates, Inc., supra.*

I find that a class action is a superior method of proceeding in this action, because it lifts the burden of individual suits from each of the proposed class members, which "would neither be fair nor efficient because individual suits would not involve sufficient losses to justify costs of litigation". *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 374 (E.D.Pa.1980). Furthermore, "if individual suits were brought, court dockets would be unnecessarily overburdened." *Id.*

### Effective Management of the Class Action

■ The court foresees no difficulty in the management of this case as a class action. Although defendants cite *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880, 883, *reh. denied*, 485 F.2d 687 (5th Cir.1973) for the proposition that plaintiff cannot effectively manage the class action because no standardized communications to the class can be found, the court does not know if, in fact, plaintiff has notified other investors who may well join the class litigation. Her competent counsel certainly is familiar with the effective management of class actions, and nothing has been demonstrated which would lead the court to believe that such effective management will not take place in this class action.

The court, therefore, finds that plaintiff has sustained her burden in demonstrating that the instant case satisfies the requirements of both Rules 23(a) and 23(b) and should be certified as a class action.

### PENDENT STATE LAW CLAIMS

The Courts in this district overwhelmingly favor certifying classes with respect to pendent common law claims. *In re IGI Securities Litigation, supra* at 461; *In re ORFA Securities Litigation, supra; In re Electro–Catheter Securities Litigation, supra* at 97,933. "The considerations that led the Third Circuit to conclude that the existence of individual questions of reliance does not defeat class certification in a Rule

10b–5 case are equally applicable to state law claims." *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 81 (E.D.Pa.1987). The Third Circuit has held that it is an abuse of discretion to deny class certification because individual issues of reliance exist. *Epstein v. Moore, supra* at 90,443, citing *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d. Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).

The same proof which will be introduced to establish the federal securities law violations is also highly relevant to the common law claim of negligent misrepresentation. *In re IGI Securities Litigation, supra* at 461.

An analysis of the recent Supreme Court decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) underscores the propriety of certification of pendent law claims-focusing initially on the sufficiency of the contacts between the state whose law is applied and the claims to as to ensure that the application of the state's law is not arbitrary:

Kansas must have a "significant contact or aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests" in order to ensure that the choice of Kansas law is not arbitrary or unfair. *Phillips* 105 S.Ct. at 2980.

■ Thus, plaintiff and other members of the class need not demonstrate that they each have personal contacts with the state whose law is chosen, only that there are sufficient contacts between their claims and that state such that the application of its law would not be arbitrary or unfair. *Id.* at 2980. Furthermore, "the interests of states other than New Jersey where class members reside would be advanced by providing these plaintiffs with an opportunity to litigate their negligent misrepresentation claims in a single class action." *Epstein v. Moore, supra* at 90,445.

■ Here there are many significant contacts between the plaintiff's claims and the State of New Jersey. First, WBI has its principal place of business in New Jer-

**412**

sey. Further, many of the false and misleading statements emanated from the corporate offices within the State. Additionally, it is likely that many class members are New Jersey residents. Moreover, "New Jersey has a strong policy interest of preventing securities fraud." *Id.* at 90,444. Thus, it would be neither arbitrary nor unfair to apply New Jersey common law to the conduct of the defendants with respect to the claims of all class members.

### CONCLUSIONS

Based upon the foregoing, I conclude that the class of "all persons or entities who purchased the common stock of Washington Bancorp., Inc. during the period of March 18, 1988 through November 17, 1988 inclusive (the "class period")" should be certified for both federal and state pendent claims presented. Furthermore, plaintiff Randi Zinberg should be permitted to move forward in this action as the class representative.

The parties are reminded that pursuant to General Rule 40D(5), they have ten (10) days from receipt of this Report and Recommendation to file and serve objections to it.