Gail Watson CHIANG, et al., Plaintiffs,

v.

Ann M. VENEMAN, in Her Official Capacity as Secretary of the United States Department of Agriculture, Defendant.

Civ. No. 2000-004 M/B.

District Court, Virgin Islands,
D. St. Croix.

Feb. 28, 2003.

---

Douglas B. Inman, Edward Jacobs, Douglas Brady, St. Croix, Virgin Islands, for plaintiffs.

Ernest Batenga, St. Croix, Virgin Islands, Marsha S. Edney, Department of Justice,

Civil Division, Washington, DC, for defendant.

## MEMORANDUM

MOORE, District Judge.

Plaintiffs have moved under Rule 23 of the Federal Rules of Civil Procedure to certify a distinct class of people to litigate their claims arising from a single, systemic policy of willful and unlawful discrimination in the administration of the defendant's rural housing loan and benefit programs in the Virgin Islands. Plaintiffs' motion will be granted.

## I. FACTUAL BACKGROUND

Gail Chiang and forty-eight other plaintiffs bring this action for declaratory and injunctive relief and compensation against the Secretary of Agriculture, presently Ann M. Veneman, in her official capacity for actions taken by the Rural Housing Service of the United States Department of Agriculture ["RHS" or "USDA"]. Plaintiffs charge that since at least January 1, 1981, RHS has discriminated against them because of their race, gender, and national origin in administering its rural housing programs in the United States Virgin Islands. The RHS was charged with administering direct loans, loan guarantees and grants for the USDA from its office in the Virgin Islands. An example is the Single–Family Housing Program, which provides low income persons with loans, grants and guarantees for home ownership and to finance vital improvements to dwellings. The plaintiffs sue under the Equal Credit Opportunity Act, 15 U.S.C. 1691a *et seq.* ["ECOA"] (Counts I–III), the Fair Housing Act of 1988, as amended, 42 U.S.C. § 3601 *et seq.* (Count IV), the Administrative Procedure Act, 15 U.S.C. § 1691 *et seq.* (Count V), and the Fourteenth Amendment to the Constitution (Count VI).

The first amended complaint alleges a pattern and practice of discrimination against each class member. Each went to the St. Croix RHS office to apply for housing loans and assistance for people with low incomes. The defendant's pattern and practice of discrimination manifested itself in at least three ways. Some members were denied an application package and told to put their names on an unlawful waiting list. RHS provided other members with applications, but then made it impossible for them to obtain credit by deliberately delaying and frustrating the process so that the program would run out of funds, the applicant would become ineligible and/or the applicant would give up. (The plaintiffs term this latter scheme the "impossible yes.") Even plaintiffs who did obtain loans were denied services such as loan workouts and payment moratoria, because of their race, gender, or national origin. In general, the first amended complaint asserts that the defendant denied each class member access to rural housing credit and relief programs by refusing to issue or delaying issuing applications and refusing to enforce the civil rights laws. Each class member was denied access to those programs and due process of law through the defendant's pattern and practice of discrimination.

Count I alleges that all of the class members were fully qualified to participate in the loan programs but were put on an illegal waiting list and denied applications for unlawfully discriminatory reasons in violation of the ECOA, resulting in $2.8 billion in damages ($500,000 each × 5,600 class members).

Count II alleges that class members were discriminated against after they applied for a loan or grant and before any loan was funded, in violation of the ECOA. Plaintiffs claim that defendant, after placing plaintiffs on the illegal list, gave class members an application and the "impossible yes" by finding the member ineligible for assistance or by delaying the application until there were no program funds available by the time the application finally went through.

Count III alleges that after class members suffered through the illegal waiting list and the impossible yes, they were subjected to further discriminatory treatment by the defendant after the loan was funded, in violation of the ECOA. In essence, this count alleges that the defendant participated in and ratified the financing of substandard or defective property and construction as part of

its plan and practice of discrimination.[1]

The USDA conducted an investigation of its Virgin Islands office in 1997 and reported that there was indeed an insidious practice of refusing to give out applications, keeping an unlawful waiting list, and frustrating the application process.

In 1999, Congress tolled the statute of limitations for a limited category of discrimination complainants. Specifically, section 741 of Pub.L. No. 105–277 authorized those who filed a "nonemployment related complaint" with the USDA before July 1, 1997, alleging discrimination in violation of the Equal Credit Opportunity Act to file a civil action within two years of the adoption of the new law on October 21, 1998.

## II. RULE 23 CLASS CERTIFICATION

### A. Class Definition

Whether a civil action with multiple plaintiffs should be treated as a class action is governed by Federal Rule of Civil Procedure 23. To obtain class certification, the plaintiffs must satisfy all four requirements of Rule 23(a) and also come within one provision of Rule 23(b). *See Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 624 (3d Cir. 1996), *aff'd, Amchem Products Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Before addressing the express prerequisites of Rule 23, however, I must make two determinations: whether there is a class and whether the class representative is a member of that class. Plaintiffs move to certify as a class

All persons who are Black, Hispanic, female, and/or Virgin Islanders who applied or attempted to apply for, and/or received, housing credit, services, home ownership, assistance, training, and/or educational opportunities from the USDA through its Rural Development offices (and predecessor designations) located in the U.S. Virgin Islands at anytime between January 1, 1981 and January 10, 2000, and who believe they were discriminated against on the basis of race, gender or national origin.

I find that the plaintiffs have described an ascertainable group who claims to be injured by the defendant in a similar fashion.[2] Furthermore, plaintiff Gail Watson Chiang is a member of that class. Chiang alleges that she is a resident of the United States Virgin Islands and that "[i]n or about 1996, [she] tried to obtain a housing loan application from USDA, but was put on a handwritten waiting list." (Decl. of Gail Watson Chiang in Supp. of Class Certification ¶ 1.)

I turn next to the express requisites of Rule 23.

### B. Rule 23(a)

Rule 23(a) requires a group of plaintiffs to satisfy: (1) numerosity, (2) commonality, (3)

---

1. Plaintiffs withdrew the allegation that defendant failed to correct construction defects. (*See* Hr'g Tr., Jan. 25, 2002, at 40–41.)

   Count IV alleges that the defendant discriminated against two plaintiffs in the financing, construction, and sales with regard to the Estate St. George Villa housing development in violation of the FHA.

   Count V alleges that the defendant discriminated against all the plaintiffs by refusing to give them applications for loans and/or grants, by denying them loan and/or grant funds, and by ratifying and approving defective construction for unlawful and discriminatory reasons, in violation of section 706(2)(A), (C) of the APA.

   Count VI alleges that all of the above was done in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

2. The defendant argues that reference to people who believe they were discriminated against is improper because the class definition must not use a subjective standard such as state of mind. I hold to the contrary that this language usefully avoids the problem of including the phrase, "those who were discriminated against," which would require proof of the substantive claim to determine the membership of the class. The plaintiffs also correctly note that this phrase "provides a useful tool in narrowing the class by allowing those who may not want to participate to self-remove by refraining from responding to any class notice ordered under 23(b)(3)" (Pls.' Reply to Def.'s Opp'n to Mot.). For Class Certification at 7. Furthermore, the plaintiff's proposed class definition emulates the language in the provision in the Code of Federal Regulations entitled "Nondiscrimination in Programs of Activities Conducted by the United States Department of Agriculture:" "*Any person who believes* that he or she (or any specific class of individuals) has been, or is being, subjected to practices prohibited by this part may file on his or her own, or through an authorized representative, a written complaint alleging such discrimination. . . ." *See* 7 C.F.R. § 15d.4(a) (emphasis added).

typicality, and (4) adequacy of representation.[3] The three categories of Rule 23(b) requirements are discussed separately below.

The burden is on the plaintiffs, as the proponents of class certification, to show that the proposed class satisfies the above requirements and should be certified. *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994). It is not necessary, however, for the plaintiffs to establish the merits of their case at the class certification stage. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In determining whether a class will be certified, the substantive allegations of the complaint must be taken as true. *Id.* Courts nevertheless may look beyond the pleadings, analyzing relevant facts and substantive law, to determine whether class certification is appropriate. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). Although district courts have broad discretion to grant or deny class certification, *see Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), courts may approve class actions only after ensuring that plaintiffs have fully complied with Rule 23, *see In re Life USA Holding, Inc., Insurance Litig.*, 190 F.R.D. 359, 364 (E.D.Pa.2000) (citing *Snider v. Upjohn Co.*, 115 F.R.D. 536, 538 (E.D.Pa.1987)). In a close case, however, "any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg*, 766 F.2d at 785.

### a. Rule 23(a)(1)—Numerosity

The "numerosity" requirement of Rule 23 states that a lawsuit may be brought as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Courts do not use a bright-line rule to determine whether the numerosity requirement has been met. *See Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir.2001) (stating that generally, if the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has

been met). The plaintiffs here allege that there are at least 2,000 possible members of the class, pointing to the handwritten waiting list at the heart of this action. A large number, however, is not the end of the inquiry. The plaintiffs must also show that it would be impracticable, or "difficult," to join all the plaintiffs. *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 602 (D.Minn. 1999) ("While the Plaintiffs need not show that joinder of all class members would be impossible, they must show that it would be difficult.").

Impracticability, in the context of class actions, "does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." *In re Life USA Holding, Inc., Insurance Litig.*, 190 F.R.D. at 365 (quoting *W.P. v. Poritz*, 931 F.Supp. 1187, 1193 (D.N.J.1996); *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J.1990)). "Courts generally evaluate impracticability of joinder by considering three separate factors: 1) the size of the putative class; 2) the geographic location of the members of the proposed class; and 3) the relative ease or difficulty in identifying members of the class for joinder purposes." *Calhoun v. Horn*, 1997 WL 633682, at *2 (E.D.Pa. Oct. 8, 1997) (citing *Ardrey v. Federal Kemper Ins. Co.*, 142 F.R.D. 105, 110 (E.D.Pa.1992)).

The United States counters that the large number is only applicable for Count I of the first amended complaint, and that the plaintiffs have failed to demonstrate numerosity with respect to Counts II through V. The plaintiffs reply that the counts can be viewed as a series of points on a "superhighway to nowhere" along which defendant's discriminatory policy, pattern, and practice systematically forced plaintiffs off the road to successfully obtaining housing loans. Plaintiffs argue that once each class member started on the highway, the only difference among

---

**3.** In full, Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of

law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

them is at what point the defendant forced the class member off the road.

Assuming as I must that the waiting list constituted an illegal and discriminatory practice, I find that the large number of possible plaintiffs cannot practicably be joined in one lawsuit.

### b. Rule 23(a)(2)—Commonality

■ Rule 23(a)(2) requires plaintiffs to demonstrate that there are questions of law or fact common to the class. Not all the questions must be common. One significant common question is sufficient. "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met . . . ." *Baby Neal,* 43 F.3d at 56 (citations omitted). Because not all the questions of law or fact need be common for certification of the class, however, I reject defendant's contention that the inclusion of credit and non-credit transactions that may not be common to one another defeats class certification.

The defendant also argues that each individual plaintiff's circumstances will ultimately determine liability, so their claims cannot be "common." The proper question, however, is whether the defendant treated the plaintiffs in a common fashion, not whether each plaintiff's factual circumstances were identical. As the Court of Appeals for the Third Circuit explained in *Baby Neal,* it is the defendant's conduct toward the plaintiffs that determines commonality. The finding of commonality in *Baby Neal,* a suit for declaratory and injunctive relief, was "based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct." *Id* at 57. I find that the same rationale applies here. Defendant's common conduct toward all plaintiffs overwhelms whatever disparate effects that conduct may have had on individual plaintiffs and any differences in circumstances there may be among plaintiffs. It is clear from *Baby Neal* that class treatment of plaintiffs' claims is appropriate even if some individualized determinations may be necessary.

Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded. Classes can be certified for certain particularized issues, and, under well-established principles of modern case management, actions are frequently bifurcated. In *Eisenberg v. Gagnon,* we held that a securities fraud case against three separate partnerships, and hence three difference general partners, met the commonality requirement. The individual damage determinations could be made, we explained, at a separate phase of the trial, but the class phase could resolve the central issue of liability for the alleged misrepresentations and omissions.

*Id.* (citations omitted). Accordingly, I find that the questions of law and fact common to the plaintiffs in this case meet the requirements of Rule 23(a)(2).

### c. Rule 23(a)(3)—Typicality

■ Subsection (a)(3) requires that the claims of the representatives be typical of those of the class. The Court of Appeals noted in *Baby Neal* that the

typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees.

*Id.* at 57 (citations omitted). The plaintiffs' claims arise from the same alleged policy, pattern, and practice that gives rise to the claims of the class members and are based on the same legal theory. Accordingly, I find that plaintiffs have satisfied the typicality requirement.

### d. Rule 23(a)(4)—Adequacy of Representation

■ Rule 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class." Fed. R.Civ.P. 23(a)(4). This adequacy of representation involves a two-pronged test to ensure that the absentee plaintiffs' interests will be fully pursued: (1) that class counsel is qualified and will serve the interests of the entire class; and (2) that the interests of the named plaintiffs are sufficiently aligned with and not antagonistic to those of the class as a whole. *Georgine v. Amchem Prods., Inc.*, 83 F.3d at 630; *Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 286 (D.N.J.1997).

The United States does not dispute the adequacy of counsel and I find that plaintiffs' attorneys are more than adequate to meet the complexities this lawsuit poses. The defendant does, however, argue that the class representatives cannot adequately represent the interests of the class because none, or perhaps just one, of them filed a timely complaint with the USDA under the statute or section 741's special tolling provision. While I agree that a person whose own case is time-barred cannot adequately represent the interests of the class, that is not the case here. With one exception, the plaintiffs have submitted affidavits each attesting that the plaintiffs made timely complaints to the USDA and/or authorized Gail Watson Chiang to complain on their behalf and Chiang did so timely. In any case, it is premature to consider whether any or all of the claims are time-barred. The plaintiffs need not prove timeliness of their claims at this certification stage because the issue goes to the merits of their case and will be the subject of later proceedings. Moreover, even if some of the claims are time-barred, the named class can be amended, modified, or even decertified altogether.

Thus, I find that the representative parties are adequate. The named plaintiffs have a substantial stake in the litigation, and there is no reason to believe that they are motivated by factors unrelated to the case itself. Finally, I find that the class itself is not beset by any internal antagonisms.

## C. Rule 23(b)

■ In addition to meeting the stipulations of Rule 23(a), the plaintiffs must demonstrate that the class would satisfy any one of the three subsections under Rule 23(b). Since Rule 23(b)(1) has no application here, and 23(b)(2) is not clearly satisfied,[4] I proceed directly to the third subsection.

An action may be maintained as a class action under Rule 23(b)(3) if

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

The defendant opposes certification by describing the proposed class members as presenting a "tangle of fact-specific grievances" that would be better off tried separately. The only common question the defendant will

---

4. According to the Advisory Committee Notes, Rule 23(b)(2) certification can be particularly well-suited to civil rights actions charging class discrimination where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive or declaratory relief appropriate for the class as a whole. The advisory committee notes continue to observe, however, that (b)(2) certification is not proper where "the appropriate final relief relates exclusively or predominantly to money damages." Plaintiffs seek various manner of injunctive relief and to recover individual damages. Despite the allegation of some "group injury" here, I find that the equitable remedies probably do not predominate. I accordingly choose not to certify this class under (b)(2). *See, e.g., In re School Asbestos Litig.*, 789 F.2d 996, 1008 (3d Cir.1986) (affirming district court's finding "that despite the plaintiffs' ingenuity the claims in this suit were essentially for damages"). Clearly, however, my conclusion that (b)(2) certification is not appropriate at this time does not "rule out the possible application of equitable remedies at some stage of the proceeding." *Id.*

concede is whether the plaintiffs were placed on a waiting list and white applicants were not. I find, however, that the class is sufficiently cohesive to warrant adjudication by class action in that the common question in each count is whether RHS's practice and policy discriminated against blacks, women, and Virgin Islanders as a class. This common question predominates over any differences in the factual circumstances of the individual plaintiffs. I agree that the "key to resolving [the question of predominance] lies in ascertaining whether the efficiency and economy of common adjudication outweigh the interest each class member may have in individual adjudication." John J. Cound, Jack H. Friedenthal, Arthur R. Miller, and John E. Sexton, Civil Procedure: Cases and Materials, Eighth Edition 707 (2001). At bottom, this case involves allegations that defendant's overarching policy, pattern, and practice discriminated against the plaintiffs. While there may be variations in individual circumstances, I find that plaintiffs have satisfied the predominance requirement because the single most important issue, that of defendant's policy, pattern, and practice—as a whole—is common to all plaintiffs.

■ Finally, the rule mandates that the class-action mechanism for claims of systemic discrimination must be "superior" to each plaintiff filing an individual lawsuit. I find that the individual interests in separate actions are not strong which weighs in favor of certification. While some individual class members may wish to exercise their right under Rule 23(c) to "opt out" of the class, it is unlikely that so many would do so that the remaining class would no longer represent the bulk of its potential members. As the claims all arise in the Virgin Islands and the class of plaintiffs are Virgin Islands residents, it is desirable to maintain the class action in this forum. Finally, the difficulties in maintaining a class action appear to be few, as there is no evidence of internal disputes within the class and notification of class members directly or by publication will not prove difficult. Handling plaintiffs' claims as a class action under subsection 23(b)(3) will be far superior to dealing with over 2,000 different lawsuits, raising the same issues on very similar facts. The efficiency gained by the class action mechanism in this case, considering the commonality of the legal questions involved, far outweighs any problems that may be posed by variations in individual facts.

I hereby grant the plaintiffs' motion to certify the class under Federal Rule of Civil Procedure 23(b)(3), reserving the discretion to modify, amend, or decertify the class as circumstances require.

Certification pursuant to Rule 23(b)(3) comes with certain procedural requirements. Class members seeking substantial monetary damages may have divergent interests. Due process requires that putative class members receive notice and an opportunity to opt out. See Fed.R.Civ.P. 23(c)(2); *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 165–66 (2d Cir.2001). Counsel for both sides shall submit to the Court in two weeks from the date of this order proposed orders for notifying class members pursuant to Rule 23(c)(2).

## ORDER

For the reasons stated in the accompanying Memorandum of even date, the Court finds that the plaintiffs have satisfied the requirements of Federal Rules of Civil Procedure 23 for class certification. Accordingly, it is, subject to alteration or amendment under Rule 23(c), hereby conditionally

**ORDERED** that the plaintiff's motion for class certification [Docket No. 69] is **GRANTED**. It is further

**ORDERED** that the plaintiff's motion to intervene [Docket No. 1673] is **DENIED** as **MOOT**. It is further

**ORDERED** that counsel for plaintiffs and for defendant shall submit, within two weeks of the date of this order, proposed orders providing notice of this class action pursuant to Rule 23(c)(2).