V. Rachel LERCH, Plaintiff,

v.

CITIZENS FIRST BANCORP,
INC., Defendant.

Harriette ROTH, et. al., Plaintiff,

v.

Richard G. KELLEY, et. al., Defendants.

Civ. A. No. 90–3538.

United States District Court,
D. New Jersey.

Oct. 28, 1992.

Lester L. Levy, Robert C. Finkel, Wolf Popper Ross Wolf & Jones, New York City, Peter S. Pearlman, Cohn Lifland Pearlman Herrmann & Knopf, Saddle Brook, N.J., for plaintiff V. Rachel Lerch.

Michael R. Cole, Alan E. Kraus, Jeffrey J. Miller, Riker, Danzig, Scherer, Hyland &

Perretti, Morristown, N.J., for defendants John J. Cahill, Walter W. Weber, Jr., and Daniel M. Dwyer.

Richard T. Garofalo, Wells, Garofalo, Jaworski & Liebman, Paramus, N.J., for defendant Richard G. Kelley.

Brian McDonough, Shanley & Fisher, P.C., New York City, for defendant Coopers & Lybrand.

Samuel Feldman, Laurence B. Orloff, Orloff, Lowenbach, Stifelman & Siegel, P.C., Roseland, N.J., for defendant Rodney T. Verblaauw.

James R. Van Horn, Senior Vice President and Gen. Counsel, Citizens First Nat. of New Jersey, Glen Rock, N.J., for defendant Citizens First Bancorp, Inc.

Robert A. Fagella, Zazzali, Zazzali, Fagella & Nowak, Newark, N.J., for defendant Jack M. Blackin.

## OPINION

### HAROLD A. ACKERMAN, District Judge.

This matter comes before the court upon a motion by plaintiffs for Class Certification pursuant to Fed.R.Civ.P. 23. In this action, plaintiffs allege that defendants engaged in securities fraud, violating federal and state laws, and causing damages to the plaintiffs. The class they seek to represent consists of:

all persons or entities who purchased the common stock of Citizens First Bancorp, Inc. on the open market during the period October 19, 1989 through October 4, 1990, inclusive (the "class period"). Excluded from the Class are the defendants, members of their immediate families and any subsidiary, affiliate or controlled person of any such defendant.

The Defendants, consisting of Citizens First Bancorp, Inc. ("Citizens"), several Citizens executives (the "Individual Citizens Defendants") and Coopers & Lybrand ("Coopers"), the accounting firm conducting Citizens' audits, do not oppose the motion in its entirety. Rather, they argue in response that the class period proposed by plaintiffs is too broad, that a separate subclass should be created to cover claims

made against defendant Coopers, and that the plaintiffs' pendent state claims should not be certified.

For the reasons detailed below, plaintiffs' motion to certify this matter as a class is granted, regarding both the federal and state claims. Defendants' motions to create a subclass, to amend the starting date of the class period, and to deny certification of the pendent state claims are denied. Their motion to amend the ending date of the class period is, however, granted.

## I. BACKGROUND

Defendant Citizens is a financial corporation that conducts a general banking business through its subsidiary, Citizens First National Bank of New Jersey. Citizens' securities are registered with the Securities and Exchange Commission ("SEC") and its common and preferred stock are traded on the American Stock Exchange. Plaintiffs, who held shares of Citizens common stock, allege that defendants fraudulently misrepresented Citizens' financial situation, artificially raising the price of Citizens stock and causing plaintiffs to invest in the company and suffer serious financial loss.

Specifically, plaintiffs' Complaint alleges the following wrongdoing:

—Citizens and the individual Citizens defendants misrepresented information about Citizens' financial policies and its provisions for loan losses, causing Citizens' stock price to be artificially inflated and violating federal securities laws and state common law of misrepresentation, fraud and deceit;

—Defendant Coopers & Lybrand, Citizens' auditing firm, aided and abetted Citizens and conspired with Citizens to commit this alleged fraud;

—Coopers violated federal securities laws and state common laws of fraud, misrepresentation and deceit by failing to disclose that it was not an independent auditor of Citizens, when in fact a Coopers partner in a secondary review capacity of the Citizens' audit was in default of hundreds of thousands of dollars in loans from Citizens;

The matter began as two separate cases, Lerch v. Citizens Bancorp, et al., and Roth v. Kelley, et. al., but the two were consolidated in an Order of January 16, 1991. Defendants' motions to dismiss the Complaints pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) were denied in an Opinion and Order issued by this Court on August 11, 1992. This Opinion addresses plaintiffs' motion to certify the matter as a Rule 23 class.

## II. DISCUSSION

In order to certify a matter as a class action, a plaintiff must demonstrate that the proposed class meets the requirements of Fed.R.Civ.P.Rule 23(a), and that it is a permissible class under Rule 23(b).

As noted above, defendants do not contest that plaintiffs generally have met the specific Rule 23 requirements with regard to the federal claims. However, they contend that the proposed class period is too broad, and that a separate sub-class should be created for those who intend to pursue claims against Coopers. Defendants then argue that a class should not be certified on the pendent state law claims.

In light of this series of arguments, I first will address the federal claims under Rule 23's requirements. Then, I will turn to defendants' particular responses to the class period as to the federal claims. Finally, I will turn to the state law claims.

### A. Federal Fraud Claims
#### 1. Rule 23

■■■ Certification of a class pursuant to Rule 23 is particularly appropriate in cases alleging violations of securities laws, since class certification facilitates the policies behind the laws. See *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert denied sub nom. Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); see also *In re Laidlaw Securities Litigation*, 1992 WL 68341 at 2, 1992 U.S.Dist. LEXIS 4977 at 9 (E.D.Pa. March 31, 1992). A court should err in favor of allowing the action to be certified. *Laidlaw* 1992 WL 68341 at 2, 1992 U.S.Dist. LEXIS 4977 at 9. Still, a court

must rigorously assess whether the proposed certification complies with the dictates of Rule 23, see *General Telephone Co. of South West v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982), and the moving party bears the burden of proof as to each of Rule 23's requirements. *Vargas v. Calabrese*, 634 F.Supp. 910, 920 (D.N.J.1986) (Debevoise, J.). I address, then, subsection (a) and subsection (b) of Rule 23.

#### a. Rule 23(a)

Rule 23(a) requires the movant to demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These factors are ordinarily referred to as "numerosity", "commonality", "typicality" and "adequacy". I address these in turn.

##### (i) Numerosity

■■ In order to survive this prong of Rule 23, the plaintiff must demonstrate that the proposed class is so numerous that joinder is impracticable. *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 405 (D.N.J.1990) (Report and Recommendation by Magistrate Judge Stanley R. Chesler) (citing *Vargas v. Calabrese*, 634 F.Supp. 910, 918 (D.N.J.1986). Impracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for class certification. *Zinberg* at 406 (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964).

In this case, plaintiffs have alleged that during the class period approximately 7,750,000 shares of Citizens common stock were traded on the American Stock Exchange, and that these shares were held by thousands of people. In keeping with the general policy to certify securities fraud

cases as classes, plaintiffs have clearly satisfied the numerosity test.

### (ii) Commonality and Typicality

■ Rule 23(a) requires that questions of law or fact be shared by the prospective class and that the representatives' claim be typical of the claims of the other class members. The commonality requirements of Rule 23 "do not require that all of the putative class members share *identical* claims." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir.1988). Rather, the requirement is satisfied if some questions of law or fact are common to the class. *Zinberg* at 406. See also *Blackie v. Barrack*, 524 F.2d 891, 902–05 (9th Cir.1975). This case contains questions numerous questions in common—for example, whether statements made by the Citizens defendants were in fact fraudulent, and whether Coopers conspired with Citizens to misrepresent Citizens' financial state. Thus, the Complaint satisfies the commonality requirement.

■ Moreover, Rule 23 requires that the representatives' claims be typical of the claims of the class. See *Zinberg* at 406. However, "[r]ule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class, and that the named plaintiff demonstrate a personal interest ... that is real and immediate, not conjectural or hypothetical." *Hassine* at 177. Typicality simply requires that the named plaintiff's situation, and the legal theories he or she relies on, do not differ from the other members of the proposed class. *Hassine* at 177.

In this case, plaintiffs allege that members of the class, including the named plaintiffs, relied upon misrepresentations and omissions of material facts by defendants that artificially inflated the price of Citizens' stock and caused the class members financial loss. The legal theories offered by the class representatives and the class members are the same.

Thus, plaintiffs have satisfied both the commonality and typicality requirements.

### (iii) Adequacy

■ The final prong of the Rule 23(a) test requires the representative party to be able to "fairly and adequately protect the interests of the class", *Zinberg* at 407. This requirement assures that a class is not certified unless plaintiff's counsel is qualified and that the plaintiff's interests are not antagonistic to the interests of the other members of the class. This Court has previously found that the counsel in this case possess "the qualification and experience in conducting [securities fraud] litigation". *Zinberg* at 408 (adopting Report and Recommendation by Magistrate Judge Stanley Chesler). Defendants have not contested this, and I see no reason to disagree with that assessment.

■ Antagonism between the representatives and the other class members may exist when a unique defense is asserted against the named plaintiff or against the other class members, see *Zenith Laboratories, Inc. v. Carter–Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.), cert. denied 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976), or when the plaintiff's situation is unique. These factors are not present in this case. Plaintiffs claim they relied upon defendants' alleged fraud, and this allegation applies to all the class members. The defenses offered also apply equally to both the class members and the representatives.

Thus, plaintiffs have established that they can adequately represent the class.

I now turn to the requirements of Rule 23(b).

### b. Rule 23(b)

Rule 23(b) provides, in relevant part, that if a prospective class representative satisfies the requirements of Rule 23(a), a class may be certified if in addition:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These issues often are referred to as "predominance" and "superiority". I address these in turn.

## (i) Predominance

■ Any given securities case contains a mixture of both individual issues and common issues. Yet, as one court has put it, the requirement must be read together with the purpose of having class actions in the first place:

> To be sure, individual issues arise in all cases requiring a class action, especially one involving ... a unitary scheme or course of conduct as a common question. But, to allow various secondary issues of the plaintiff's claim to destroy the institution of a class action would render the rule an impotent tool for private enforcement of the federal securities laws.

*In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 142 (D.N.J.1984) (quoting *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 373 (E.D.Pa.1980)). In this case, all class members seek a determination that the defendants misrepresented and omitted disclosing material facts and that these misrepresentations and omissions resulted in the artificial inflation of Citizens' stock. All class members also seek a determination that these alleged misrepresentations and omissions violated federal securities laws. These issues certainly predominate, and this part of the test is satisfied. See Friedenthal, Kane, Miller, Civil Procedure at 735 (1985) ("In cases involving securities fraud, ... predominance may be found if the defendant's challenged activities stem from a single, class-wide course of conduct, so that the issue of statutory liability is common to the class....").

## (ii) Superiority

The Third Circuit has explicitly stated that "[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws 'since the effectiveness of those laws may depend in large measure on the application of the class action device.'" *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied sub nom. Weinstein v. Eisenberg,*

474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985) (quoting *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Particularly, the Third Circuit has pointed to the policies behind class actions of affording a means of redress to people who would not otherwise be situated to assert their alleged rights:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Eisenberg* at 785 (quoting *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

These policies apply to the instant case. In this matter, plaintiffs have alleged that defendants caused the price of Citizens' stock to be artificially inflated. It is beyond question that Citizens' common stock were purchased in various quantities based on the various economic positions of the class members. Moreover, since the class members seek a determination on essentially the same issues—that defendants misrepresented or failed to disclose material facts, and these misrepresentations and omissions constituted a violation of the Securities and Exchange Act—a class action would enhance judicial economy and efficiency. See *Eisenberg* at 786 (mentioning policy of efficiency in class actions).

In light of the above analysis, I find that this matter may properly be certified as a class action under Rule 23 with regard to the federal securities claims. I next need to turn to defendants' objections to the breadth of the class and to its request that a separate subclass be certified for the claims against Coopers.

### 2. Defendants Objections

#### a. Breadth of Class Period

■ In determining whether the class period is adequate, the Court generally

must not inquire into the merits of the plaintiff's case, see *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). Rather, the Court must inquire only into whether "the facts which underlie the gravamen of the plaintiff's complaint ... represent a reasonable basis on which an individual purchaser or the market *would* rely." *In re IGI Securities Litigation*, 122 F.R.D. 451, 462 (D.N.J.1988) (quoting *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 143 (D.N.J.1984)). Defendants allege that plaintiffs' proposed beginning date and their proposed ending date bear no relationship to the gravamen of the plaintiffs' complaint. I address these arguments in turn.

### (i) Ending date

■ First, defendants take issue with the proposed ending date of the class period. On this issue, a number of courts have held that "liability under the securities acts is terminated when curative information is publicly announced or otherwise effectively disseminated." *In re Data Systems* at 143 (citing *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Cal.1982)). This test strikes a balance between avoiding a decision on the merits of plaintiff's claim and providing a reasonable ending date for claims of fraud against the defendants.

There are three proposed ending dates before the Court. Plaintiffs have proposed October 4, 1990 since, they allege, it was on that date that Citizens disclosed the serious financial and operational state of the bank. On October 4, Citizens announced that the third quarter dividend would not be paid on either its common or preferred stock, and that future dividends would not be paid without approval of the Comptroller of the Currency. Defendants, on the other hand, contend that this date is far beyond the point when investors could reasonably rely on Citizens' allegedly fraudulent statements. It contends that full disclosure occurred on August 1, 1990 or, at the latest, by August 31, 1990, when press reports disclosed the financial situation of the bank. The question before the court, then, is when, as a matter of law, it can be held

that curative information was publicly announced or effectively disseminated.

August 1, 1990 is clearly too early to end the class period. As plaintiffs point out, at this time Citizens' Chairman was still depicting Citizens as a healthy financial institution and stating that Citizens' loan portfolio and cash flows were very strong. While news reports began to circulate by this time stating that a government examination required Citizens to increase its loan loss reserves, defendants vigorously denied the significance of this examination. And there was not at this time a barrage of news reports sufficient to outweigh defendants' assurances as a matter of law. Moreover, it was as yet undisclosed that a Coopers auditor was in default on loans given him by Citizens. I decline to hold that individuals "who invested after [this] publication were in a significantly different posture in regards [sic] to reliance than those investors who traded before the article[s]." *In re ORFA Securities Litigation*, 654 F.Supp. 1449, 1465 (D.N.J.1987).

Defendants' proposed ending date of August 31, however, merits a closer inquiry, particularly when disclosures around that date are read in light of a series of news reports beginning at the end of July.

Beginning at the end of July, 1990, information about Citizens' financial condition became public that culminated in a series of reports at the end of August. On July 28, 1990, press accounts reported that Citizens had announced a $34.488 million loss for the second quarter of that year, compared with a gain of $9.222 million for the corresponding period in 1989. It was also reported that Citizens expected to post a loss for the full year of 1990. These press reports further revealed that the Office of the U.S. Comptroller of the Currency had ordered Citizens to add $70 million to its reserves for possible loan losses. This was after Citizens had provided only a $5 million loan loss provision for the first quarter in 1990. It is true that at the time of these news reports Defendant Kelly, then chairman and chief executive officer of Citizens, still was representing that "Citizens has always maintained a very conservative

lending policy, and for this reason we feel highly confident about our loan portfolio" and that Citizens would continue to pay its quarterly dividend. But on August 28, 1990, news reports revealed that "Citizens First Chief resigns after big loss: 34M of red ink upsets directors." These reports quoted a Citizens director as questioning the credibility of Kelly's representations toward the end of his tenure: "Like anybody else, when you're in a position where you're completely in control, you get a little negligent ... Maybe it's time to bring in someone new without prior commitments and personal relationships to crack down and get the ship in order." The Record, August 28, 1990. Moreover, these reports reiterated the fact that the government had mandated that $70 million be added to Citizens' loan loss reserves. Finally, August 30, 1990 revealed for the first time that loans by Citizens to a Coopers partner involved in the Citizens audit were in default of hundreds of thousands of dollars. While it appears that Citizens was at this time minimizing the significance of the loans in default, the information about the loans was nonetheless publicly reported. On top of this, one of the named representatives, plaintiff Rachel Lerch, sold her Citizens stock when the August 31 disclosures about Citizens were reported. In fact, she states in her Complaint that by August 31, Citizens had fully disclosed all relevant facts. Lerch also testified that these disclosures were devastating and revealed "big trouble ahead."

■ Nonetheless, plaintiffs contend that only on October 4, 1990, when Citizens' announced that it would not pay its third quarter dividends, and would not pay future dividends without approval by the Office of Comptroller of the Currency was Citizens' real financial situation clear to the investing public. Plaintiffs note that among its allegations is a claim that by not fully disclosing material facts, Citizens was perpetuating a fraud on the investing public.[1] Further, plaintiffs claim that a finding that the class period ends prior to October 4 would be a factual determination improper at this stage in the litigation. See *Sherin v. Gould*, 115 F.R.D. 171, 174 (E.D.Pa.1987).

■ Plaintiffs misapprehend the test. While it is true that a finding that the class period ends sooner than plaintiffs wish is, in one sense, a merits determination, such a determination is not necessarily improper at this stage of the litigation. See *In re Data Access Systems* at 143–44 (citing *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357 (E.D.Pa.1980). While doubts regarding the reasonableness of the reliance "should be resolved in favor of extending the class period", see *In re Data Access Systems* at 143, when allegedly fraudulent optimistic projections are so dissipated as to make it unreasonable for a potential investor to continue to rely on those projections, the Court may narrow the class period accordingly, see *id.* at 144; see also *Peil* at 363.

After a careful review of the undisputed facts in this case, it seems that the falsely optimistic projections alleged to have been made by Citizens, and the alleged improper relationship between Citizens and a Coopers auditor, were widely disseminated by August 31, 1990. It is undisputed that by August 31, 1990 the news about Citizens' loan to a Coopers auditor, now in default, was disseminated to the public. It is also undisputed that by this time Citizens had disclosed a sizeable loss for the second quarter of 1990, expected to post a loss for the full year, and had to increase its loan loss reserves by $70 million. Moreover, it was by this time disclosed that the OCC had conducted an examination which had resulted in the increase in loan loss reserves. Finally, Citizens' Chairman during the relevant period had announced his resignation.

The undisputed facts support a finding that after August 31, 1990, when the barrage of information detailed above had been disclosed, the investing public was in

---

**1.** This issue was addressed in *In re ORFA Securities Litigation,* in which Judge Brotman noted that "[t]he relevant question is only whether the article[s] made it unreasonable to continue relying on the alleged misrepresentations, now who was responsible for the article[s]." *Id.* at 1465.

a qualitatively different position with regard to reliance on allegedly fraudulent statements than potential investors prior to that time. The news reports demonstrate that "the effect of the initial [allegedly fraudulent] statements was sufficiently dissipated to warrant the designation of this date as the end of the class period." *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 369 n. 12 (E.D.Pa.1980). The fact that only on October 4, 1990 did Citizens explicitly eliminate dividends does not increase the qualitatively different nature of any post-August 31 reliance.

Thus, I will certify the ending date of the class period as August 31, 1990.[2]

### (ii) Beginning date

 Citizens next contests the beginning date for the class period. In their motion, plaintiffs assert that the appropriate beginning date of the class period is October 19, 1989. According to the Roth Complaint, on this date:

> Citizens issued a press release in which defendant Kelley announced that net income for the third quarter (the quarter ending September 30, 1989) was $9,226,000 and for the first nine months was $27,731,000, and that these amounts represented increases of 13.0 percent and 23.8 percent over the corresponding periods in 1988. The announcement added that net income per share on a fully diluted basis for the past quarter was $.41 and for the first nine months was $1.22, increases of 10.8 percent and 22.0 percent, respectively, over the corresponding periods in 1988. The announcement also reported a 13 percent increase in total assets over the past year. According to the press release, the corporate "contact" person with respect to the announcement was defendant Blackin.

Roth Complaint, ¶ 25. Defendants object to this starting date for the following reasons: (1) there is no allegation in the Complaint that these representations were false, or, if they were false, what was false about them; (2) there is nothing concrete in the Complaint to justify this date. Defendants contend that the beginning date should be December 20, 1989, the starting date of the class period asserted in the Lerch Complaint. On that date, Citizens announced that its Board of Directors had "voted to increase the dividend on common stock from $.60 to $.72 per share annually." Lerch Complaint, ¶ 20.

I cannot at this point hold that the October 19 date bears no relationship to the gravamen of the complaint. First, plaintiffs do allege that Citizens' representations on October 19, 1989 were false. Moreover, they allege that they were false due to particular misrepresentations. As the Roth Complaint states:

> The foregoing statements of defendants, as set forth in paragraphs 15–41 above ... misrepresented the true financial and operating condition of Citizens and failed to disclose material facts necessary to make the statements made, in the context in which they were made not misleading, in violation of Section 10(b) of the Exchange Act and SEC Rule 10b–5. In fact, continuously throughout the Class Period, Citizens' reserves for loan losses, in particular for loans made to certain commercial borrowers, were woefully inadequate but its public announcements were intended to disguise this. Indeed, throughout the Class Period, Citizens, at the direction of and with the consent and knowledge of the Individual Defendants, issued releases, statements and reports which misrepresented that Citizens was experiencing continued successful operations and well-managed growth, that the quality of its loans, its provision for loan losses and its system of control and review of Citizens' lending activities were being managed conservatively and prudently, and that it was continually assessing the adequacy of its loan loss reserves.

Roth Complaint, ¶ 49. In other words, plaintiffs allege that the optimistic statements of Citizens growth made on October 19, 1989 were fraudulent in light of Citizens' actual financial state. This seems to

---

**2.** It should be noted that the court retains the discretion to "redefine the contours of the class should that become necessary". *In re Data Access Systems* at 147.

be directly related to the gravamen of the Complaint. It also marks the beginning date of defendants' alleged dissemination of "a continuous stream of false information", see *In re Kirschner Medical Corp. Securities Litigation,* 139 F.R.D. 74, 81 (D.Md.1991). Thus, I will accept October 19, 1989 as the beginning date of the class period.

### 3. Coopers Motion

Defendants next seek to have a separate sub-class certified for individuals who assert claims against Coopers & Lybrand. Specifically, defendants argue that since Coopers' allegedly fraudulent audit was only publicized in March, 1990, class members only have standing to sue Coopers after March, 1990. While Coopers' argument is well taken, the cases it relies on are factually distinguishable from this case. And recognizing that in securities cases the court should err on the side of certification, I will deny Coopers' request.

Plaintiffs have alleged that the Coopers partner who was supervising the Citizens audit was in charge of the Citizens account in 1988, 1989 and 1990. Thus, according to plaintiffs, at the beginning of the class period, Coopers knew that the person to be overseeing the audit of Citizens was in default to Citizens in loans of hundreds of thousands of dollars. The fact that an accountant with an alleged conflict of interest would be reviewing the audit of the bank with which he has the conflict of interest would reasonably be relied upon by potential investors. Thus, it is conceivable that Coopers' alleged failure to disclose the conflict of interest contributed to the alleged artificial inflation of the price of Citizens common stock.

Whatever the difficulty of ultimately proving a case against Coopers prior to the publication of the audit, in light of the Complaint it is inappropriate to decide as a matter of law that Coopers' actions prior to March 1990 are immune from liability for fraud. Therefore, defendants' motion to create a separate subclass is at this point denied.

### B. Pendent State Claims

The Rule 23 analysis detailed above applies equally to the plaintiffs' state law claims. Defendants, however, argue that plaintiffs' pendent state claims should not be certified under Rule 23. I address their arguments in turn.

#### 1. Conflicts of Law

Defendant first argues that since the members of the class are residents of states all across the country, different state law rules will apply depending on the individual plaintiff. Therefore, according to this argument, class certification should be denied because of the unmanageability of the task of determining and applying the laws of so many states. Defendant further notes that significant differences in the law exist regarding plaintiffs' claim of negligent misrepresentation and the duties of a corporation's auditors.

The starting point for an analysis of this issue is the class-action requirement that there be "common issues of law or fact" to maintain a class action. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821, 105 S.Ct. 2965, 2979, 86 L.Ed.2d 628 (1985). This proposition has led the Supreme Court to hold that a court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Id.* at 821, 105 S.Ct. at 2979. The inquiry into choice of law "is not altered by the fact that it may be more difficult or more burdensome to comply with the constitutional limitations because of the large number of transactions which the State proposes to adjudicate and which have little connection with the forum." *Id.* However, the Court found that a state may apply its own law to all members of a class when that state has a "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [the forum state's] law is not *arbitrary or unfair." Id.* at 821–22, 105 S.Ct. at 2979 (citations omitted) (emphasis added).

■ Therefore, the proper inquiry in this case is whether New Jersey has significant contacts with the claims of all the plaintiffs such that a choice of New Jersey law is not arbitrary or unfair.

In a prior case before this Court, I endorsed the Report and Recommendation of Magistrate Chesler that applying New Jersey law was not arbitrary or unfair when the defendant's principal place of business was in New Jersey, when many of the false and misleading statements emanated from the corporate offices within the state, when class members were New Jersey residents, and when the case involved securities fraud, an area where New Jersey has a strong policy interest. See *Zinberg* at 411–12.

This case is closely analogous to *Zinberg*. Defendant Citizens First Bancorp, Inc. is a one-bank holding company whose principal asset is Citizens First National Bank of New Jersey. The Bank has branches in five New Jersey counties, and Citizens' main office is in Glen Rock, New Jersey. Moreover, the individual named defendants maintained business offices in New Jersey, and thus many of the allegedly fraudulent statements occurred in New Jersey. Finally, many members of the class are New Jersey residents and the case involves securities fraud. As to the auditing firm, Coopers has offices in Parsippany, New Jersey, and the Coopers partner who allegedly oversaw the audit of Citizens in violation of his duty of independence was in charge of the Parsippany New Jersey office. Therefore, I find that the application of New Jersey law is neither arbitrary nor capricious, in that New Jersey has numerous contacts with the claims, regardless of the particular plaintiff.

■ Next, Coopers argue that since issues of individual reliance will predominate over any issues in common to the entire class, it is inappropriate to certify the State claims for class action treatment. Defendant's argument is premised on the proposition that the "fraud on the market" theory has not been adopted by New Jersey courts.

While defendants' argument that issues of individual reliance may have been adopted in a variety of other circuits, courts in this district have consistently held that in securities fraud cases, the pendent claims may be certified. *IGI Securities Litigation* at 461; *ORFA Securities Litigation* at 1462; *Zinberg* at 411. See also *Zinberg* at 403 (listing cases in which state pendent claims have been certified for class treatment). Addressing the question of individual reliance in the context of federal fraud claims, the Third Circuit has held that questions of individual reliance does not defeat class certification. In fact, the Court of Appeals has found that it is an abuse of a district court's discretion to deny class certification of federal securities claims because individual issues of reliance exist. *Eisenberg* at 786. One court explained the policy behind this general rule as follows:

> questions of actual reliance do not render class treatment of the pendent claims unworkable. There is a limited factual basis for the claims of fraud and misrepresentation in this case. The core elements of fraud: material misrepresentation, knowledge of falsity, and intent, must be argued on the basis of the identical facts for all the members of the class. Considering the total lack of personal contact between the defendants and class members, the actual reliance argument will not be amenable to significant variation among class members.

*IGI Securities Litigation* at 461 (quoting *In re ORFA Securities Litigation*, 654 F.Supp. 1449, 1461 (D.N.J.1987)). Thus, courts have held that the policy enunciated by the Third Circuit regarding individual reliance in federal claims applies equally to state claims. See *Zinberg* at 411; *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 81 (E.D.Pa.1987).

In this case, while the plaintiffs may have to show individual reliance, the identical statements issued by defendants will be relevant to all the plaintiffs. Thus, there would not be such "significant variation in the proofs of class members" that class certification of the pendent claims should be denied. *Zinberg* at 411.

I therefore will certify the plaintiffs' state pendent claims for class treatment.

Finally, defendants request that if the state claims are certified for class treatment, procedures be set up to be followed at trial for plaintiffs to show reliance. While defendants' claim is premised on its belief that New Jersey has not adopted the fraud on the market theory, this issue has yet to be determined by the court. In light of the many stages to come in this litigation, I do not believe that this is a propitious time to set up such procedures. Thus, defendants' request is denied.

## CONCLUSION

For the reasons detailed above, plaintiffs' motion for class certification is granted, though defendants' motion to narrow the ending date of the class is also granted. Defendants' motions to amend the beginning date of the class, and to create a subclass of parties entitled to make claims against Coopers are denied. Defendants' request that the Court adopt at this time procedures for determining issues of individual reliance under New Jersey law is also denied. A class is hereby certified covering:

> all persons or entities who purchased the common stock of Citizens First Bancorp, Inc. on the open market during the period October 19 through August 31, 1990, inclusive. Excluded from the Class are the defendants, members of their immediate families and any subsidiary, affiliate or controlled person of any such defendant.