REVISED, OCTOBER 5, 2000

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-40533
_____

STAN SPENCE, Individually and on behalf of others similarly
situated; WILLIAM HATFIELD, Individually and on behalf of others
similarly situated; JOHN JOHNSON, Lieutenant, Individually and on
behalf of others similarly situated,

Plaintiffs-Appellees,

JOHN P. KELLOGG,

Intervenor/Plaintiff-Appellee,

versus

GLOCK, GES.m.b.H., an Austrian limited liability company, GLOCK,
INC., a Georgia Corporation

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
September 27, 2000

Before JONES, DUHÉ, and WIENER, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Defendants appeal the district court's certification of
a nationwide class of owners of Glock pistols who allege that their
pistols are defective in several respects. The district court
certified the class after concluding that Georgia law should be

applied to all the class members' claims. Because the district court erred in its choice of law analysis, and thus abused its discretion on the issue of predominance under Rule 23(b)(3), we reverse the certification.

**FACTS & PROCEDURAL HISTORY**

In this class action case, purchasers of particular models of Glock handguns manufactured between 1986 and 1997 assert multiple causes of action alleging that Glock guns suffer from an alleged design defect that causes the guns to jam and/or discharge accidentally.[1] Plaintiffs' theories of liability include: 1) design defect; 2) failure to warn; 3) fraud, deceit and material misrepresentations of fact; 4) negligence; 5) breach of express and implied warranties; and 6) negligent misrepresentation.[2] The plaintiffs seek damages for economic loss, based on the diminished value of their pistols and the need for repairs, as well as punitive damages and attorneys' fees.

Putative class members number, at a minimum, 50,000, and reside in all fifty states and the District of Columbia. The named plaintiffs are all residents of Texas who own various Glock model handguns. Defendant-appellant Glock Ges.m.b.H. ("Glock Europe") is the Austrian corporation that manufactures Glock model pistols.

_____

[1] The alleged design defects concern the firing pin safety system and the ejection port of the gun. Plaintiffs-appellees claim that both defects increase the likelihood that the gun will jam. The firing pin safety defect can allegedly also cause accidental discharges.

[2] The parties agree that these claims sound both in tort and contract.

2

Glock, Inc. ("Glock USA") is a Georgia corporation that assembles and distributes Glock pistols in the United States and Canada. Glock Austria designs the guns in Austria and manufactures the parts there. The parts are then shipped to Glock USA in Georgia, where they are assembled, tested for quality control and sent to distributors across the United States. Glock USA sells its products to law enforcement dealers and wholesale distributors throughout the United States, who then sell the products to retail handgun dealers for sale to the public.

In the district court, plaintiffs sought class certification of an opt-out class under Rule 23(b)(3). The district court referred Plaintiffs' Motion for Class Certification to a magistrate judge who issued a recommendation to certify the class. The district court accepted the recommendation and rejected the defendants' objections, reasoning that Georgia law applied by virtue of Glock USA's contacts with that state and Georgia's regulation of Glock USA, and that therefore the class satisfied Rule 23(b)(3)'s predominance requirement. The Glock defendants now appeal, arguing principally that the district court's choice of Georgia law was incorrect and that the class should not have been certified because the proper choice of law precludes a finding that common questions of law predominate.[3]

---

[3] Appellants also appeal the certification on the grounds that individual factual issues defeat predominance and that class certification is not superior to individual adjudication in this case. Because we decide the appeal on choice of law grounds, we decline to address these contentions.

3

**DISCUSSION**

A district court must rigorously analyze Rule 23's prerequisites before certifying a class. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The district court has broad discretion to certify a class, which it must exercise within the confines of Rule 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981); *Castano*, 84 F.3d at 740. The party seeking certification bears the burden of proof. *See Castano*, 84 F.3d at 740; *Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). This court reviews a class certification for abuse of discretion, but if the district court has committed legal error in the predominance inquiry, reversal is required. *Castano*, 84 F.3d at 740.

Rule 23 of the Federal Rules of Civil Procedure sets forth several conditions that must be met for a proposed class of plaintiffs to be certified. Appellants do not focus on whether or not the proposed class has met the initial requirements of Rule 23(a).[4] Instead, they contend that the proposed class has not met

---

[4] Rule 23(a) requires that a class: 1) be so numerous that joinder is impractical; 2) have common questions of law or fact; 3) have representative parties with typical claims or defenses; and 4) have representative parties that will fairly and adequately protect the class's interest. *See* Fed.R.Civ.P. 23(a).

4

the requirements of Rule 23(b)(3).  Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to the individual adjudication of claims.  *See* Fed.R.Civ.P. 23(b)(3).

The district court's predominance finding depends on its choice of law analysis that held Georgia law applicable to all the claims of all the plaintiffs.  Appellants assert that, to the contrary, the laws of 51 jurisdictions apply in this class action. If appellants are correct, the variations in the laws of the states and District of Columbia "may swamp any common issues and defeat predominance."  *Castano*, 84 F.3d at 741.[5]  The threshold question for this court, therefore, is whether the district court conducted a proper choice of law analysis and correctly decided that Georgia law controlled.  *See Castano*, 84 F.3d at 741.

In diversity cases, federal courts are obliged to apply the choice of law rules of the forum state.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941).  Texas courts use the ALI Restatement's "most significant relationship test" for all choice of law cases

---

[5]     *See also Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("Because we must apply an individualized choice of law analysis to each plaintiff's claims ... the proliferation of disparate factual and legal issues is compounded exponentially") *aff'd* 521 U.S. 591-117 S.Ct. 2231 (1997); *In re Am. Med. Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action").

except those contract cases in which the parties have agreed to a valid choice of law clause. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (adopting the most significant relationship methodology for tort choice of law issues). This Court reviews a district court's choice of law determination *de novo*. *See In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996).[6]

Section 6 of the ALI Restatement (Second) of Conflict of Laws delineates the general principles that inform a choice of law determination. Section 6 states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

---

[6] Texas also requires that a choice of law determination be done on an issue by issue basis. *See Duncan*, 665 S.W.2d at 421. The district court erred in not conducting a complete issue by issue analysis. But overarching this error is its fundamentally incorrect method of choice of law determination for each issue that it considered. Therefore, this opinion will not proceed on a strict issue by issue basis.

In later sections, the Restatement individually addresses choice of

law analysis for a variety of issues.

Section 145 concerns choice of law for issues in tort and

states that:

> (1) The rights and liabilities of the parties with respect to
> an issue in tort are determined by the local law of the state
> which, with respect to that issue, has the most significant
> relationship to the occurrence and the parties under the
> principles in § 6.
> (2) Contacts to be taken into account in applying the
> principles of § 6 to determine the law applicable to an issue
> include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury
> occurred,
> > (c) the domicile, residence, nationality, place of
> incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the
> parties is centered.
> These contacts are to be evaluated according to their relative
> importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws §145.  Courts should

evaluate these contacts for their quality, not their quantity.  *See*

*Gutierrez*, 583 S.W.2d at 319.

Georgia's contacts with the case are as follows.  First,

the guns at issue are imported, assembled, and tested for quality

control in Georgia.  Second, Glock USA is incorporated and has its

principal place of business in Georgia and is regulated under

Georgia firearm law in order to comply with BATF certification.

Third, Glock distributes its products from Georgia and receives

warranty cards there.  Fourth, the alleged ejection port defect is

corrected in Georgia.  Of these contacts, only one is mentioned in

7

Section 145 -- Glock USA's domicile in Georgia -- and it is offset by the fact that the plaintiffs are domiciled all over the country.

The district court also counted Georgia as the place of injury and the place where the conduct causing the injury occurred. In regard to its description of Georgia as the place of injury, the district court was clearly wrong. Plaintiffs allege that they suffered economic loss because of the defective design of the guns they bought. The manufacture of allegedly defective goods is no wrong unto itself. *See Crisman v. Cooper Ind.*, 748 S.W.2d 273, 277 (Tex. App. 1988). Instead, the economic injury occurred when and where plaintiffs bought the guns. Furthermore, the district court's conclusion that Georgia is the place where the conduct causing the injury occurred is also suspect. The plaintiffs claim that the defect is a design defect, making it more logical to conclude that the conduct causing the injury occurred in Austria, where the gun was designed and its parts manufactured, than in Georgia, where the guns were merely assembled. The argument that Georgia is the locus of the conduct causing the injury is more plausible in regard to plaintiffs' fraud-related claims.

In short, while the actual contacts with Georgia are certainly enough to suggest that Georgia has more than a negligible relationship to the tort issues in this case, they are not so overwhelming that it is clear that Georgia has the most significant relationship to those issues. To answer that question, one must

8

compare Georgia's contacts and the state policies those contacts implicate with those of the 50 other interested jurisdictions.

The central problem with the district court's opinion is its failure to make this comparison. Instead, the district court essentially counted the contacts Glock had with Georgia, considered Georgia's regulation of Glock and concluded from those factors that Georgia had the most significant relationship to the tort issues. Critically, the court did not examine the relationship of other interested states -- for example, the states where class members bought their guns -- to the tort issues, as Section 6 requires. If it had, it would have recognized that this case implicates the tort policies of all 51 jurisdictions of the United States, where proposed class members live and bought Glock pistols.

This Court finds instructive the opinion in *In re Ford Motor Co. Bronco II Product Liability Litigation*, 177 F.R.D. 360 (E.D.La. 1997). In that case, plaintiffs argued that Michigan law controlled their claims that Ford had knowingly marketed a defective automobile and fraudulently concealed the truth from the public, thereby causing plaintiffs economic loss as owners of the car. The court rejected this contention, stating:

> [T]he choice of law determination is a function of the individual defendant, plaintiff, and the circumstances of the claim. What is required is a comparative analysis of Michigan law and the law and policies of each state with which the claim has contacts. As far as can be discerned at this time, all 51 jurisdictions have some contact with the claims.... The policies of each state with contacts must be examined. Plaintiff has not undertaken this analysis.

9

*Id.* at 370 - 71.  Although that case was decided under Louisiana law, Louisiana follows similar comparative choice of law principles to those in the Restatement.  *Oliver v. Davis*, 679 So.2d 462, 468 (La. Ct. App. 1996).  Texas's adoption of the most significant relationship test requires that the policies of each state with contacts be examined,[7] yet the plaintiffs have not undertaken this analysis.

The burden of proof lies with the plaintiffs; in not presenting a sufficient choice of law analysis they have failed to meet their burden of showing that common questions of law predominate.  *See Castano*, 84 F.3d at 741.  The district court is required to know which law will apply before it makes its predominance determination.  *See id.*  The district court here could not discharge its duty because plaintiffs did not supply adequate information on the policies of other interested states relevant to the choice of law.  Nor did the plaintiffs provide the court with a sub-class plan in case the court disagreed that Georgia law controlled.  *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 n. 15 (5th Cir. 1998) (where plaintiffs did not offer a

---

[7] *See* Restatement (Second) of Conflict of Laws §6 cmt. f ("In determining a question of choice of law, the forum should give consideration not only to its own relevant policies ... but also to the relevant policies of all other interested states."); Restatement (Second) of Conflict of Laws §145 cmt. e ("[T]he forum should give consideration to the relevant policies of all potentially interested states.").

workable subclass plan they failed to meet their certification burden).

The plaintiffs' attempt to finesse the choice of law by omitting comparison of laws other than Georgia's is surprising in light of governing authority.  *Castano* is predicated squarely on the court's duty to determine whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law.  84 F.3d at 744.  Before *Castano*, then-Judge Ginsburg wrote that class action plaintiffs must provide an "extensive analysis" of state law variations to reveal whether these pose "insuperable obstacles" to certification. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986), *cert. denied*, 107 S.Ct. 3188 (1987).  Plaintiffs' failure to carry their burden, and the district court's unwillingness to hold plaintiffs to their proof, have resulted in a critical legal deficiency -- insufficient evidence of predominant common legal issues.[8]

---

[8]    The insuperability of this problem, if plaintiffs had met their burden, is suggested in another recent case, where a district court refused to certify a class action case against Ford Motor company based on claims arising in 51 jurisdictions: "Defendants have provided a comprehensive appendix detailing the variations among the states' laws on strict liability, breach of express and implied warranty, fraud, and consumer protection acts. . . . For example, regarding plaintiffs' strict liability claim, alone, defendants point to at least five different approaches to defining a "design defect;" differing positions as to whether the "economic loss doctrine" precludes strict liability actions; differing views as to whether physical harm is a prerequisite to bringing a cause of action; different warning requirements; and different affirmative defenses. Defendants have likewise demonstrated a multitude of different standards and burdens of proof with regard to plaintiffs' warranty, fraud and consumer protection claims." *In re: Ford Motor Company Ignition Switch Products Liability Litigation,* 174 F.R.D. 332, 350-51 (D.N.J. 1997).

If the district court had performed a proper choice of law analysis, it likely would not have found Georgia law controlling on the tort issues in this nationwide class action.[9] As was discussed earlier, the place of injury was not Georgia, but the place of purchase. The place where the conduct causing the injury occurred is more likely to be Austria than Georgia, at least for the non-fraud claims. Also, the class members are domiciled and likely bought their guns in all 50 states and the District of Columbia. All these 51 relevant jurisdictions are likely to be interested in ensuring that their consumers are adequately compensated in cases of economic loss,[10] but many will have different conceptions of what adequate compensation is. Georgia's laws may not provide sufficient consumer protection in the view of

---

[9] The district court also may well not have found Georgia law applied if it had performed an adequate choice of law analysis for the contracts issue. Section 188 of the Restatement sets forth contacts to consider in regard to a contract issue. They include: 1) the place of contracting; 2) the place of negotiation; 3) the place of performance; 4) the location of the contract's subject matter; and 5) the domicile, residence, place of incorporation and place of business of the parties. *See* Restatement (Second) of Conflict of Laws §188. Glock USA is incorporated and has its principal place of business in Georgia, but plaintiffs are domiciled in the 50 states and the District of Columbia. The place of contracting would presumably be the place of purchase; the location of performance and the location of the subject matter of the contract would be the place where the gun is used; and the place of negotiation would not apply. Related state policies of all the interested states would also, of course, need to be examined for a thorough approach to this issue.

[10] *See, e.g., In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332, 348 (D.N.J. 1997) ("Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.").

other states.[11]    Indeed, as the home state of the assembler/distributor, Georgia's policies might tend to favor those interests over consumers'.  For such reasons, several courts that have confronted similar situations in other multistate class actions have refused to find a single state's law controlling.[12]

Appellees argue that, in design defect cases, the most important factors are where the product was manufactured and where it was placed in the stream of commerce, and that those factors point toward Georgia.  This argument has several problems.  First, in most of the cases that appellees cite for support, the location of the accident was either fortuitous or the sole connection with a particular state, so the place of injury was not given the weight it normally would have in a choice of law issue in tort.  *See Mitchell v. Lone Star Ammunition*, 913 F.2d 242, 249-50 (5th Cir. 1990) (recognizing that North Carolina's only contact with the case was as the place of injury); *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 577 (5th Cir. 1996) (stating that the place of injury is fortuitous in this air crash case); *In re Air Crash Disaster at Mannheim, Germany*, 769 F.2d 115 (3d Cir. 1985)

---

[11]    In fact, defendants-appellants point out several doctrines that might limit recovery in Georgia in this case: the economic loss doctrine, lack of privity, limits on punitive damages, among others.

[12]    *See, e.g., In re Ford Motor Co. Ignition Switch Products*, 174 F.R.D. at 348; *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595 (S.D.N.Y. 1982); *Poe v. Sears, Roebuck & Co.*, 1998 WL 113561 (N.D.Ga. 1998).  *But see Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 256-57 (D.N.J. 1992); *Elkins v. Equitable Life Ins. Co. of Iowa*, 1998 WL 133741, *17 (M.D.Fla. 1998).

(concerning a helicopter crash). Generally, the place of injury (*i.e.*, the place of purchase) in this class action case will neither be fortuitous nor the only contact with a particular state. For example, many class members will have bought their guns where they live, and the guns will have been shipped for sale in the same state.

Second, the products in this case were designed in Austria, and all component parts were manufactured there, and, following assembly in Georgia, each gun entered the stream of commerce in the state where it was shipped to be sold. *See Crisman*, 748 S.W.2d at 277 (finding that a trailer manufactured in Illinois entered the stream of commerce in Florida). Thus, even the place of manufacture and the place where the product entered the stream of commerce do not point unmistakably to Georgia.

Third, appellees' argument understates the importance that place of injury plays in a tort choice of law analysis. The comment to Section 145 emphasizes this:

> In the case of personal injuries or injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law.... This contact likewise plays an important role in the selection of the state of the applicable law in the case of other kinds of torts.

Restatement (Second) of Conflict of Laws §145 cmt. e. The exception to this guideline comes where the place of injury is fortuitous or bears little relation to the occurrence and the

14

particular issue.  *See id.*  In an economic loss case, that cannot be said to be true.  Furthermore, in a Texas case in which plaintiffs claimed tortious financial harm, the El Paso Court of Appeals considered the place of injury an important factor.  *See CPS Int'l Inc. v. Dresser Ind., Inc.*, 911 S.W.2d 18, 29 (Tex. App. 1995).  Here, the fact that the place of injury was the place of purchase points to all 51 jurisdictions.

Nevertheless, the class's contract claims (breach of express and implied warranty) would still be controlled by Georgia law if the district court correctly interpreted a choice of law provision in Glock USA's instruction manual.[13]  Under Texas law, the parties' choice of law provision governs contract claims within its scope;[14] where such a provision exists, courts are not obliged to perform a most significant relationship test.  In this case, however, the instruction manual's choice of law provision does not reach the contract issues.  The manual states: "For all sales contracts with GLOCK Inc., place of jurisdiction shall be Atlanta, GA and Georgia State Law shall be applicable."  By its terms, class members are not parties to this choice of law provision, for they had no sales contracts with Glock USA.  Instead, they bought their guns from distributors who had bought them from Glock USA.  The

---

[13]    The court also stated perfunctorily that even if it used the Restatement Sections 187 and 188, the provisions for choice of law for contract issues, to determine the applicable law, it would still apply Georgia law.

[14]    *See Duncan*, 665 S.W.2d at 421.

15

language on the warranty registration card to some degree buttresses this conclusion: Glock's limited warranty states that some of its provisions may not apply in some states.

Since the putative class members are not parties to the choice of law provision in the instruction manual, the most significant relationship analysis determines the controlling law. As with the tort claims, the district court did not perform an adequate choice of law analysis, and the plaintiffs did not supply adequate information with which to conclude that the predominance requirement of Rule 23(b)(3) was satisfied.

## CONCLUSION

By not providing the district court with a sufficient basis for a proper choice of law analysis or a workable sub-class plan, the plaintiffs failed to meet their burden of demonstrating that common questions of law predominate. Therefore, the district court abused its discretion in certifying the class and the class is hereby decertified.

**REVERSED** and **RENDERED**.

16